1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

**SOUTHERN DISTRICT OF CALIFORNIA**

11

KENNETH SHOCKMAN,

CASE NO. 14-cv-1946-H (JMA)

12

Petitioner,

**ORDER:**

13

**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS**

14

vs.

15

**(2) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; AND**

16

17

TIM PEREZ, Warden, et al.,

**(3) DENYING CERTIFICATE OF APPEALABILITY**

18

Respondents.

[Doc. Nos. 1, 16, 19]

19

20

      On August 19, 2014, Petitioner Kenneth Shockman ("Petitioner"), a state

21

prisoner represented by pro bono counsel, filed a petition for writ of habeas corpus

22

pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  On October 21, 2014, Respondent filed

23

a response to the petition.  (Doc. No. 6.)  On November 20, 2014, Petitioner filed a

24

traverse. (Doc. No. 9.) On September 2, 2015, the magistrate judge issued a report and

25

recommendation that recommended denying the petition for writ of habeas corpus.

26

(Doc. No. 16.) On October 29, 2015, Petitioner filed objections to the report in which

27

he requested a certificate of appealability.  (Doc. No. 19.)  On October 31, 2015,

28

Petitioner filed additional objections to the report.  (Doc. No. 20.)  After careful

1  consideration, the Court denies the petition for writ of habeas corpus, adopts the

2  magistrate judge's report and recommendation, and denies a certificate of appealability.

3  ## Background

4  **I.    Procedural History**

5         On June 9, 2009, a jury convicted Petitioner of one count of transportation of

6  controlled substances with intent to distribute, one count of possession for sale of a

7  controlled substance, and one count of possession of a controlled substance. (Lodg. No.

8  1 at 158-60.)  At an agreed bench trial on the enhancement for sentencing, the court

9  found that Petitioner had a prison prior and a strike prior and sentenced Petitioner to

10 seven years in custody. (Lodg. No. 2 at 721-22.)

11        Petitioner appealed his conviction to the California Court of Appeal, Fourth

12 Appellate District, Division One.  (Lodg. No. 3.)  On October 4, 2010, Petitioner filed

13 a state petition for a writ of habeas corpus.  (Lodg. No. 4.)  The state appellate court in

14 a consolidated opinion affirmed Petitioner's conviction and denied habeas relief. (Lodg.

15 No. 7.)[1]  Petitioner then filed a petition for review in the California Supreme Court.

16 (Lodg. No. 8.) The California Supreme Court initially granted review on July 21, 2011,

17 but subsequently dismissed the case without review on May 22, 2013.  (Lodg. Nos. 10

18 & 11.)

19        On August 19, 2014, Petitioner filed a federal petition for a writ of habeas corpus.

20 (Doc. No. 1.)   On September 6, 2014, Petitioner submitted a supplemental

21 memorandum of points and authorities.  (Doc. No. 4.)  Respondent filed an answer to

22 the petition on October 21, 2014.  (Doc. No. 6.)  On November 20, 2014, Petitioner

23 filed a traverse.  (Doc. No. 9.)  On July 27, 2015, Petitioner filed a memorandum in

24 support of the traverse.  (Doc. No. 12-1.)

25        Petitioner contends that he received ineffective assistance of trial counsel. (Doc.

26 No. 1 at 6.)  Petitioner additionally argues that the trial court violated his due process

27 

28        [1] People v. Shockman, 193 Cal. App. 4th 1607 (2011).

1    rights by permitting evidence of Petitioner's prior conviction.  (<u>Id.</u> at 7.)  Finally,

2    Petitioner claims the trial court violated his Sixth Amendment confrontation rights by

3    admitting fingerprint evidence. (<u>Id.</u> at 8.)  Respondent argues the state court's resolution

4    of the claims was neither contrary to, nor an unreasonable application of, clearly

5    established Supreme Court law.  (Doc. No. 6.)

6    **II.    Statement of Facts**

7            The Court takes the following facts from the California Court of Appeal's

8    opinion:[2]

9            *Prosecution Case*

10                   In April 2009 undercover narcotics officers employed by the San
     Diego Police Department arrested an individual named Collier on
11   suspicion he was selling methamphetamine in the Old Town area of San
     Diego. The undercover officers recovered Collier's cellular telephone
12   (cell phone) and searched the contact list stored in the phone's memory.
     One of the officers, Luke Johnson, sent a text message from Collier's cell
13   phone to a number of contacts he found in its memory. Johnson's text
     stated: "Can you bring me some?" Within two minutes, Johnson received
14   a text from one of the contacts, which stated: "You're ready already?"
     The text was sent from someone identified in the cell phone's memory
15   as "Rob"; later, police were able to identify "Rob" as Robert Peary,
     Shockman's codefendant.
16
                   Johnson and Peary then sent each other a series of text messages.
17   Johnson sent Peary a text message which stated that he had a lot of
     customers waiting. Peary responded with a text message which stated:
18   "From K or C. Does it matter? And how much? The usual?" Based on his
     training and experience, Johnson believed "K" and "C" referred to
19   suppliers of methamphetamine and Peary wanted to know if Collier had
     any preference as to suppliers. Johnson sent Peary another text message
20   which stated that he wanted to double his usual order and he wanted it
     from K. Peary responded with a text message which stated: "I will check
21   for availability and price. Please hold." Five minutes later, Peary sent
     Johnson another text message: "K is going to be picking me up shortly.
22   I'm hoping to be there in 45 or less." Peary then sent another text
     message which stated: "Me and K are coming to you." Then, by way of
23   further text messages, Johnson and Peary agreed to meet on a bike path
     near an E-Z8 motel on Pacific Coast Highway.
24
                   Johnson and other police officers went to the location where Peary
25   agreed to meet. Upon arriving Johnson sent Peary a text message: "Are
     you here and how much?" Peary responded by text message: "I'm here
26   and it[']s 750." Shortly thereafter, undercover officers observed
     Shockman driving a gold BMW in the vicinity of an E-Z8 motel on
27   Pacific Coast Highway. A man, later identified as Peary, was in the

28   ───────────────────
            [2] The Court gives deference to state court findings of fact and presumes them to
     be correct.

passenger seat. After Shockman's car pulled into the motel parking lot and then pulled out, the officers observed someone walking to the bike path.

Officer Johnson followed Shockman and saw Shockman drive to the adjacent bike path three times. Officer Johnson stopped Shockman and then went to the bike path where he found Peary walking briskly along a ramp; Johnson stopped Peary and a small package dropped from Peary's shorts. The package was a small plastic bag wrapped with a rubber band, which was itself wrapped in a black cocktail napkin. The cocktail napkin appeared to have been cut with scissors. Inside the plastic bag Johnson discovered 13.94 grams of methamphetamine.

After recovering the methamphetamine from Peary, narcotics officers searched Shockman's residence, where they found further incriminating evidence. On Shockman's bed they found pieces of black cocktail napkins, black rubber bands, small plastic bags and a pair of scissors. The cocktail napkins, rubber bands and plastic bags were similar to the items used to wrap the methamphetamine which dropped from Peary's shorts. On a nightstand they found a spoon with residue that was consistent with methamphetamine, a scale with a black cocktail napkin on it and a prescription bottle that contained 0.96 grams of methamphetamine. The narcotics officers also found a business card with a pricelist for methamphetamine.

Officer Johnson testified that although he had participated in the investigation of over 500 narcotics cases, he had never seen or heard about a practice of packaging methamphetamine in cocktail napkins.

*Defense*

At trial Shockman testified on his own behalf. According to Shockman, Peary was a friend who called and asked Shockman for a ride while Shockman was not at home. According to Shockman, he told Peary to wait inside Shockman's home and that he would pick him up in about 30 minutes. Shockman then picked Peary up, took Peary to where Peary wanted to go and was stopped by police. Shockman testified he did not know Peary was carrying methamphetamine and did not know Peary was involved in other drug transactions.

Shockman claimed he uses the scale narcotics officers found in his home to measure medical marijuana. Shockman also admitted there were black cocktail napkins in his home, but he testified he did not cut or alter them. Finally, Shockman testified he did not know there was a small amount of methamphetamine in his home.

In addition to his testimony and over the strenuous objections of both the prosecution and Peary, the trial court permitted Shockman to play for the jury an audio recording of a conversation between Shockman and Peary. The conversation took place while Shockman and Peary were in the back of a police car. According to Shockman, he did not know the conversation was being recorded. In the clearly audible portions of the recording, Shockman expresses surprise Peary was carrying any methamphetamine and Peary responds by admitting he had a small amount for his personal use. In the recorded conversation, Peary also

tells Shockman that he told police that Shockman was merely giving him a ride and that Shockman had no clue about what Peary was doing.

Shockman's portrayal of the conversation as one which neither he nor Peary knew was being recorded was substantially undermined by one whispered statement Peary made near the beginning of their conversation. After Shockman asked Peary "[w]hat the hell were you doing anyway?" Peary, in a clearly audible voice, stated: "I just went down and had to f..., meet somebody." However, immediately after this audible statement, Peary can be heard on the recording whispering: "They found it."

The trial court permitted Peary's counsel to cross-examine Shockman with respect to a prior conviction Shockman suffered for the sale of methamphetamine and Shockman's prior use of cocktail napkins as a means of wrapping the methamphetamine. The trial court also permitted the prosecution to cross-examine Shockman in some detail with respect to the prior conviction.

People v. Shockman, 193 Cal. App. 4th 1607, 1611-13 (2011).  (Lodg. No. 7.)

**Discussion**

I.    **Legal Standards**

    A.    **Petition for Habeas Corpus**

A federal court may review a petition for writ of habeas corpus by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); accord Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).  Habeas corpus is an "extraordinary remedy" available only to those "persons whom society has grievously wronged . . . ."  Juan H. v. Allen, 408 F.3d 1262, 1270 (9th Cir. 2005) (quoting Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993)).  Because Petitioner filed this petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the petition.  See Lindh v. Murphy, 521 U.S. 320, 327 (1997); Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 562 U.S. 86, 99 (2011).  Federal habeas relief is available only if the result reached by

the state court on the merits is "contrary to," or "an unreasonable application" of United States Supreme Court precedent, or if the adjudication is "an unreasonable determination" based on the facts and evidence.  28 U.S.C. §§ 2254(d)(1)-(d)(2).

A federal court may grant habeas relief only if a state court either "applies a rule that contradicts the governing law set forth in [the United States Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent."  Early v. Packer, 537 U.S. 3, 8 (2002).  "[R]eview under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  "Although the Supreme Court has declined to decide whether a district court 'may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied,' an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief."  Sully v. Ayers, 725 F.3d 1057, 1075 (9th Cir. 2013) (citing Pinholster, 563 U.S. at 203 n.20).

A federal court may grant habeas relief under the "unreasonable application" clause of § 2254(d)(1) if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  Williams, 529 U.S. at 407.  A federal court may also grant habeas relief "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id.  The state court's "unreasonable application" of binding precedent must be objectively unreasonable to the extent that the state court decision is more than merely incorrect or erroneous.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (citation omitted); see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  Additionally, even if a state court decision is "contrary to" United States Supreme Court precedent or rests on an "unreasonable determination" of facts in light of the evidence, the petitioner must show

that such error caused substantial or injurious prejudice.  <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (quoting <u>Brecht</u>, 507 U.S. at 637-38); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007); <u>Bains v. Cambra</u>, 204 F.3d 964, 977 (9th Cir. 2000).  The AEDPA creates a highly deferential standard toward state court rulings.  <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002); <u>see also</u> <u>Womack v. Del Papa</u>, 497 F.3d 998, 1001 (9th Cir. 2007) (citing <u>Woodford</u>, 537 U.S. at 24).

In determining whether a state court decision is contrary to clearly established federal law, the Court looks to the state court's last reasoned decision.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).  Where there is an unexplained decision from the state's highest court, the court "looks through" to the last reasoned state judgment and presumes that the unexplained opinion rests upon the same ground.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-06 (1991).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).  If a party objects to any portion of the magistrate's report, the district court reviews de novo those portions of the report.  <u>Id.</u>

## B.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 684-86 (1984).  To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  <u>Id.</u> at 688; <u>accord</u> <u>Elmore v. Sinclair</u>, 799 F.3d 1238 (9th Cir. 2015) .  A petitioner must also demonstrate that he was prejudiced by his counsel's errors.  <u>Strickland</u>, 466 U.S. at 694; <u>accord</u> <u>Williams</u>, 529 U.S. at 390-91.

Counsel's performance is deficient only if it falls below an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S. at 687-88.  The petitioner bears the burden of overcoming the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  <u>Id.</u> at 689.  When considering a claim of

1   ineffective assistance of counsel, a reviewing court must be highly deferential to

2   counsel's performance.  Id.  "Surmounting Strickland's high bar is never an easy task."

3   Padilla v. Kentucky, 559 U.S. 356, 372 (2010).  The petitioner must show "that counsel

4   made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

5   defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.

6       To show prejudice, the petitioner must establish that there is "a reasonable

7   probability that, but for counsel's unprofessional errors, the result of the proceeding

8   would have been different."  Strickland, 466 U.S. at 688.   "A reasonable probability

9   is a probability sufficient to undermine confidence in the outcome."  Id.  A petitioner

10   cannot establish prejudice by showing only that counsel's errors had "some conceivable

11   effect on the outcome of the proceeding."  Id. at 693.

12       **C.    Due Process Violation**

13       A criminal defendant has a right to a fair trial.  Strickland, 466 U.S. at 684-85.

14   Evidentiary decisions do not provide a basis for federal habeas relief, unless the

15   decision made the trial "fundamentally unfair in violation of due process."  Johnson v.

16   Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (citing Estelle v. McGuire, 502 U.S. 62, 67-68

17   (1991)).  Further, "[i]t is not the province of a federal habeas court to reexamine state-

18   court determinations on state-law questions."  Id. (quoting McGuire, 502 U.S. at 67-68).

19   Thus, a petitioner for habeas relief "bears a heavy burden in showing a due process

20   violation based on an evidentiary decision."  Boyd v. Brown, 404 F.3d 1159, 1172 (9th

21   Cir. 2005).

22       In a federal habeas petition, a court must determine not if a state evidentiary

23   decision was improperly made, but rather whether the "trial court committed an error

24   which rendered the trial so arbitrary and fundamentally unfair that it violated federal

25   due process."  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991) (citing

26   Reiger v. Christensen, 789 F.2d 1425, 1430 (9th Cir. 1986)); accord McGuire, 502 U.S.

27   at 68 ("In conducting habeas review, a federal court is limited to deciding whether a

28   conviction violated the Constitution, laws, or treaties of the United States.").  Under the

AEDPA a federal court must defer to the state court's decision unless a Supreme Court decision "squarely address[es] the issue in the case" or "establish[es] a legal principle that clearly extends to a new context to the extent required by the Supreme Court." Varghese v. Uribe, 736 F.3d 817, 830 (9th Cir. 2013).

Further, under the AEDPA, "even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting 28 U.S.C. § 2254(d)). The Supreme Court has not yet ruled definitively on whether admission of "irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. Additionally, the Supreme Court has not found a due process violation for a criminal defendant by admission of evidence of prior crimes. See McGuire, 502 U.S. at 75 n.5; see also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that admission of propensity evidence is not clearly contrary to established Supreme Court precedent under the AEDPA).

**D.    Right to Confrontation**

The Sixth Amendment guarantees a criminal defendant the right to be confronted with the witnesses against him. U.S. Const. amend. VI. With respect to non-testimonial hearsay, the States are free to develop their own laws. Crawford v. Washington, 541 U.S. 36, 68 (2004). When testimonial evidence is to be given, however, "the Sixth Amendment demands what the common-law required: unavailability and a prior opportunity for cross-examination." Id.

Business records are not testimonial evidence. See Melendez-Diaz, 557 U.S. 305, 324 (2009). Business records are "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." Id. Records created as part of an arrest, including fingerprinting, are not testimonial. See Cty. of Riverside v. McLaughlin, 500 U.S. 44, 58 (1991); United States v. Weiland, 420 F.3d 1062, 1075 (9th Cir. 2005).

**II.     Analysis**

     **A.     Ineffective Assistance of Counsel**

Petitioner claims ineffective assistance of counsel arising from his attorney's failure to adequately investigate the facts and circumstances of Petitioner's 2002 conviction. (Doc. No. 1 at 6.)  Respondent argues that the state's denial of Petitioner's petition was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court law.  (Doc. No. 6-1 at 6, 11.)

At a pretrial hearing, the prosecution sought permission to admit evidence at trial regarding Petitioner's 2002 conviction for possession of methamphetamine for purposes of sale.  (Lodg. No. 2 at 60-61.)   The trial court  ruled against admission under California Evidence Code 1101(b) because of its unduly prejudicial effect.  (Id. at 63.) However, the court warned Petitioner that contrary testimony regarding non-familiarity with drugs on the stand would allow the prosecutor to introduce the prior conviction. (Id.)

Petitioner testified in his own defense.  (Id. at 284.)  On direct examination, Petitioner disavowed any knowledge of the co-defendant's possession of methamphetamine. (Id. at 296-97.)  Petitioner acknowledged that the cocktail napkins found in his home were his, but he denied using the cocktail napkins to wrap the methamphetamine. (Id. at 291.)  The prosecution argued that evidence from the 2002 conviction should be allowable to impeach Petitioner based on the similar use of cocktail napkins as packaging in both the  2002 conviction and the instant case. (Id. at 308.)

The trial court ruled against the prosecution, even though it had concluded that the prior evidence was "classic 1101(b) evidence" of "distinctive modus operandi, common design, or plan," because it had not been disclosed prior to trial and had not been presented in the prosecution's case in chief.  (Id. at 321-22.) But, the court noted that Petitioner had not finished testifying and reserved the right to allow the evidence on cross-examination or the prosecution's rebuttal case, should Petitioner testify in a

manner making the evidence relevant for impeachment or character purposes.  (Id. at 322-23.)

The co-defendant's counsel then cross-examined Petitioner regarding his prior use of cocktail napkins to wrap methamphetamine. (Id. at 349-50.) Petitioner admitted that he had wrapped methamphetamine in cocktail napkins in 2002, but he denied that he intended to sell the drugs after wrapping them. (Id. at 350-51.)  The court ruled that Petitioner's denial of his intent to sell methamphetamine in 2002 "opened the door" to be questioned about his 2002 conviction. (Id. at 352).  The prosecution then questioned Petitioner in detail regarding the facts and circumstances of his 2002 conviction for possession of methamphetamine for sale.  (Id. at 361-67.)

Petitioner properly raised his ineffective assistance of counsel claim in his petition for review to the California Supreme Court, including an affidavit from his defense counsel, which that court dismissed.  (See Lodg. Nos. 10 & 11.)  Based on that dismissal, this Court must "look through" to the most recently reasoned state opinion. See Ylst, 501 U.S. at 806.   The California Court of Appeal denied Petitioner's ineffective assistance of counsel claim, holding in a reasoned opinion that his "counsel acted reasonably in relying on Shockman to tell him about any pertinent details of the prior crime." Shockman, 193 Cal. App. 4th at 1623.

This holding was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  See Williams, 529 U.S. at 407-08.  Petitioner's trial counsel's investigation was not objectively unreasonable. See Strickland, 466 U.S. at 690-91.

Next the appellate court concluded that, even if Petitioner's counsel had been ineffective for failing to investigate the particular facts and circumstances of his 2002 conviction, such failure did not prejudice Petitioner in any way. Shockman, 193 Cal. App. 4th  at 1623-24.  In fact, earlier discovery of the police report would have increased the likelihood of the prior conviction being admitted as modus operandi evidence. See id. at 1624.

Petitioner's trial counsel asserts that he would have advised Petitioner to accept the pre-trial plea agreement had he known of the previous conviction. Id. An assertion, lacking a "credible, independently corroborated prima facie showing of reasonable probability that he would have accepted the plea offer but for his trial counsel's alleged ineffectiveness" is insufficient. In re Alvernaz, 2 Cal. 4th 924, 946 (1992); accord Turner v. Calderon, 281 F.3d 851 (9th Cir. 2002). But see Nunes v. Mueller, 350 F.3d 1045 (9th Cir. 2003) (holding state court's rejection of habeas relief objectively unreasonable when petitioner made a prima facie case of ineffective assistance of counsel stemming from a failure of counsel to accurately inform petitioner of terms of plea deal).

A criminal defendant has a right to effective assistance of counsel during the plea bargaining process. Missouri v. Frye, 132 S.Ct. 1399, 1407-08 (2012). To establish prejudice from a rejected plea deal, Petitioner must "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 132 S.Ct. 1376, 1385 (2012).

Petitioner presents insufficient evidence to support his claim. Rather, as the Court of Appeal noted, the record indicates that Petitioner was aware of his previous conviction and the evidence against him in the instant case, was aware of the "high risk" of conviction, and nevertheless chose to proceed to trial instead of accepting a plea bargain. Shockman, 193 Cal. App. 4th at 1624. Petitioner has not established that, if Petitioner's trial counsel had investigated the prior crime, Petitioner would have changed his position. As a result, he has not demonstrated a "reasonable probability that the plea offer would have been presented to the court." See Lafler, 123 S.Ct. at 1385.

1   Alternatively, Petitioner's trial counsel asserts that his trial tactics would have

2   been different had he been aware of the use of cocktail napkins in Petitioner's previous

3   conviction.  (Lodg. No. 4, Ex. A at 2.)  Given the amount of incriminating evidence

4   against Petitioner, even assuming that Petitioner's trial counsel had used different trial

5   tactics, there is no reasonable probability that the result of the trial would have been

6   different.  See Strickland, 466 U.S. at 694; Bemore v. Chappell, 788 F.3d 1151,

7   1169-70 (9th Cir. 2015).

8   Accordingly, Petitioner's trial counsel's representation of the Petitioner was not

9   deficient, nor did it result in prejudice.  Thus, the Court denies habeas relief as to

10  Petitioner's ineffective assistance of counsel claim.

11  **B.    Due Process Violation**

12  Petitioner claims a due process violation arising from the introduction of

13  Petitioner's prior conviction.  (Doc. No. 1 at 7.)  Respondent argues that the state

14  court's denial of the petition was neither contrary to, nor an unreasonable application

15  of, clearly established United States Supreme Court law.  (Doc. No. 6-1 at 6, 11.)

16  Petitioner raised this claim in his petition for review to the California Supreme

17  Court. (Lodg. No. 10.) The California Supreme Court dismissed the petition.  (Lodg.

18  No. 11.) Thus, this Court must "look through" to the last reasoned decision.  Ylst, 501

19  U.S. at 801-06.

20  On direct appeal, Petitioner argued that the trial court erred in permitting his co-

21  defendant to introduce Petitioner's 2002 conviction.  Shockman, 193 Cal. App. 4th at

22  1618.  The Court of Appeal disagreed.  Id.  It concluded that the prior conviction was

23  admissible under California Evidence Code 1101(b).  Id.  Accordingly, it concluded the

24  trial court did not abuse its discretion in allowing evidence of the prior conviction to be

25  used against Petitioner.  Id.

26  The Court of Appeal's review of the evidentiary decision to admit Petitioner's

27  2002 conviction during Petitioner's cross-examination is neither contrary to, nor an

28  unreasonable application of, clearly established Supreme Court law. See Williams, 529

1    U.S. at 407-08; <u>Mejia</u>, 534 F.3d at 1046; <u>Holley</u>, 568 F.3d at 1101.

2        Accordingly, the admission of Petitioner's 2002 conviction did not violate
3    Petitioner's due process rights.  Thus, the Court denies habeas relief as to Petitioner's
4    due process claim.

5        **C.    Right to Confrontation**

6        Petitioner claims a Sixth Amendment violation stemming from the trial court's
7    decision during the agreed upon bench trial on the one year enhancement to admit his
8    prior conviction with testimony of a fingerprint expert.  (Doc. No. 1 at 8).  Proof of the
9    prior conviction resulted in a sentencing enhancement of one year.  (Lodg. No. 2 at 721-
10   22.)  Respondent argues that the state court's denial of Petitioner's petition was neither
11   contrary to, nor an unreasonable application of, clearly established United States
12   Supreme Court law.  (Doc. No. 6-1 at 22-23.)

13       At Petitioner's bench trial on his prior convictions, Petitioner objected to the
14   testimony of a fingerprint expert comparing Petitioner's fingerprints from the instant
15   arrest to Petitioner's fingerprints from prior arrests.  Petitioner argued that the testimony
16   of the technician who rolled Petitioner's fingerprints in the prior case was required.
17   (Lodg. No. 2 at 521-22.)  The trial court disagreed.  (<u>Id.</u> at 524-25).  It admitted the
18   evidence and made a true finding as to the prison prior and strike prior based upon the
19   expert's comparison of the Petitioner's current prints with the prior fingerprints.  (<u>Id.</u>)

20       Petitioner properly raised this claim in his petition for review to the California
21   Supreme Court.  (Lodg. No. 10.)  In light of <u>People v. Lopez</u>,[3] <u>People v. Dungo</u>,[4] <u>People</u>

22

23

24

25       [3] 55 Cal. 4th 569 (2012) (holding that admission of prosecution's evidence of
26   non-testifying analyst's laboratory report was not testimonial because the relevant
     sections of the laboratory report were not made with the requisite level of formality or
27   solemnity).

28       [4] 55 Cal. 4th 608 (2012) (holding facts recorded in autopsy report non-testimonial
     and allowing testimony of supervisor regarding those facts).

v. Rutterschmidt,[5] and Williams v. Illinois,[6] the California Supreme Court dismissed the petition. (Lodg. No. 11.) Based on that dismissal, this Court must "look through" to the most recent reasoned state court opinion. See Ylst, 501 U.S. at 806. The appellate court denied Petitioner's Sixth Amendment claim and concluded that the fingerprinting process was non-testimonial. Shockman, 193 Cal. App. 4th at 1626.

On direct appeal, Petitioner argued that his Sixth Amendment confrontation rights were violated based on Melendez-Diaz[7] and the lack of testimony from the fingerprint technician who took his mug profile prints during the proceedings related to his prior conviction. Id. at 1625. The California Court of Appeal disagreed, instead holding that "the work of the technicians who took Shockman's fingerprints in the earlier proceedings and recorded those facts [cannot] be considered testimonial within the meaning of Melendez-Diaz." Id. at 1626. The court reasoned that the "fingerprinting process did not implicate Shockman in any crime" and the "fact that the administrative records of the fingerprints could be used in criminal proceedings to subject Shockman to sentence enhancements did not alter their inherently non-testimonial nature." Id. (citing People v. Taulton, 129 Cal. App. 4th 1218, 1222-24 (2005)).

Admission of non-testimonial evidence is not subject to the confrontation clause of the Sixth Amendment. Crawford, 541 U.S. at 68. Accordingly, the California Court of Appeal's decision to characterize the fingerprint evidence as non-testimonial was not contrary to, nor an unreasonable application of, clearly established Supreme Court law. Williams, 529 U.S. at 407-08. Thus, the Court denies habeas relief as to Petitioner's

---

[5] 55 Cal. 4th 650 (2012) (holding harmless error decision to allow witness to testify on the basis of toxicology reports not prepared by him).

[6] 132 S. Ct. 2221 (2012) (holding expert testimony about a DNA profile of semen found on victim from non-testifying analyst's report non-testimonial).

[7] Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009) (holding that failing to have the forensic expert who substantiated defendant's possession of cocaine to testify at trial and instead relying on his affidavit violated defendant's right to confront witnesses against him).

1  right to confrontation claim.

2  <u>**Conclusion**</u>

3       For the foregoing reasons, the Court denies the petition for habeas corpus and

4  adopts the magistrate judge's report and recommendation.  Additionally, the Court

5  declines to issue a certificate of appealability as Petitioner has failed to make a

6  substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

7       **IT IS SO ORDERED.**

8  DATED: December 4, 2015

9

10  _____
    MARILYN L. HUFF, District Judge

11      UNITED STATES DISTRICT COURT